## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

**TOYA KENAN and MONICA COOPER,** individually, and on behalf of others similarly situated,

Plaintiffs,

vs.

**GLOBAL PAYMENTS, INC.**, a Georgia Corporation,

Defendant.

Civil Action File No.

## COLLECTIVE AND CLASS ACTION
## COMPLAINT AND JURY DEMAND

Plaintiffs, TOYA KENAN and MONICA COOPER ("Plaintiffs"), individually and on behalf of all others similarly situated, by and through their attorneys, hereby bring this Class/Collective Action Complaint against Defendant GLOBAL PAYMENTS, INC. ("Defendant"), and state as follows:

## INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 and arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the North Carolina

1

Wage and Hour Act ("NCWHA"), N.C.G.S. §§ 95-25.1, *et seq*., and for common law claims of breach of contract or (in the alternative) unjust enrichment.

2.      According to its website, Defendant "is a technology and software company, providing the world's leading complete commerce ecosystem to businesses of every size." In addition to their market-leading technology, they "have 24,000 people around the world, delivering the expert advice you need to make the most of [their] solutions."[1]

3.      Defendant offers call center services to a variety of companies, including large financial institutions. The "expert advice" referenced above comes from their "team of 24,000 payment experts," including Plaintiffs, who are hourly customer service representatives ("CSRs").

4.      Although Defendant provides CSRs with a variety of internal job titles, the off-the-clock work claims discussed herein are essentially the same for all CSRs.

5.      The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous, and in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses which are prevalent in the industry.  *See* DOL Fact Sheet #64: Call Centers under the FLSA, https://www.dol.gov/whd/regs/compliance/whdfs64.pdf.

---

[1] *See*, https://www.globalpayments.com/about-us (last visited 10/24/2022).

6.      One of those abuses, present in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

7.      More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

8.      Defendant requires its CSRs to work a full-time schedule, plus overtime, however, Defendant does not compensate CSRs for all work performed.

9.      Defendant requires their CSRs to perform compensable work tasks off-the-clock before and after their scheduled shifts and during their unpaid meal periods.

10.      This policy results in CSRs not being paid for all time worked, including overtime.

11.      In the course of performing their job responsibilities, Defendant's CSRs use multiple computer networks, software programs, applications and phone

3

systems.

12.    The time CSRs spend booting up and logging into these programs and applications before, during and after their shifts is compensable because the programs and applications are an integral, indispensable and important part of the CSRs' work, and they cannot perform their jobs effectively without them.

13.    Defendant's CSRs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications and phone systems.

14.    Upon information and belief, Defendant's CSRs all follow the same timekeeping process and are subject to the same relevant timekeeping and attendance policies.

15.    Plaintiffs seek to represent in this action all current and former CSRs who are similarly situated to each other in terms of their positions, job duties, pay structure and Defendant's violations of federal and state law.

16.    Plaintiffs internal job title was "Fraud Analyst," but other CSRs experienced the same or substantially similar off-the-clock work.

17.    Defendant knew or should have known how long it takes CSRs to complete their off-the-clock work, and Defendant could have properly compensated Plaintiffs and the putative Collective and Class for this work, but did not.

4

18.     Defendant knew or should have known that CSRs, including Plaintiffs, worked overtime hours for which they were not compensated.

19.     Plaintiffs seek a declaration that their rights, and the rights of the putative Collective and Class, were violated, an award of unpaid wages, an award of liquidated damages, injunctive and declaratory relief, attendant penalties and an award of attorneys' fees and costs to make them, the Collective and Class whole for damages they suffered, and to ensure that they and future workers will not be subjected by Defendant to such illegal conduct in the future.

## JURISDICTION

20.     This Court has subject matter jurisdiction over Plaintiffs' FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims raise a federal question under 29 U.S.C. § 201, *et seq.*

21.     Additionally, this Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

22.     Moreover, this Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d).

23.     This is a class action in which the aggregate claims of the individual

Class members exceed the sum value of $5,000,000 exclusive of interest and costs, there are believed to be in excess of 100 Class members, and at least some members of the proposed class have a different citizenship than Defendant.

24.    Defendant's annual sales exceed $500,000 and Defendant has more than two employees, so the FLSA applies in this case on an enterprise basis.

25.    Defendant's CSRs, including Plaintiffs, engage in interstate commerce or in the production of goods for commerce and therefore they are also covered by the FLSA on an individual basis, by virtue of their regular and routine use of phone lines in the performance of their job duties.

26.    This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they are so closely related to Plaintiffs' federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

27.    This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

28.    This Court has personal jurisdiction over Defendant because it conducts business within the state of Georgia, has its principal place of business and headquarters in Georgia, is registered with the Georgia Secretary of State and employs individuals within the state of Georgia.

6

29.     This Court also has personal jurisdiction over Defendant because it has purposefully availed itself of the privilege of conducting activities in the state of Georgia, has established minimum contacts sufficient to confer jurisdiction over it and has its principal place of business in this district and division; and the assumption of jurisdiction over Defendant will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

## VENUE

30.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant conducts substantial business activities within this District and maintains its principal place of business in this District.

## PARTIES

31.     Plaintiff TOYA KENAN ("Plaintiff Kenan") is a North Carolina resident who worked for Defendant as a remote CSR in North Carolina within the last three years.

32.     Defendant paid Plaintiff Kenan for her services in the form of an hourly wage, for all credited hours worked, most recently at the rate of $15.00 per hour.

33.     Plaintiff Kenan signed a consent to join this collective action lawsuit. **Exhibit 1**, Kenan Consent to Join.

34.     Plaintiff MONICA COOPER ("Plaintiff Cooper") is an Alabama resident who worked for Defendant as a remote CSR in Alabama within the last three years.

35.     Defendant paid Plaintiff Cooper for her services in the form of an hourly wage, for all credited hours worked, most recently at the rate of approximately $15.00 per hour.

36.     Plaintiff Cooper signed a consent to join this collective action lawsuit. **Exhibit 2**, Cooper Consent to Join.

37.     Defendant is a Georgia Corporation (Control Number 0039354) with its principal place of business located at 3550 Lenox Rd NE, Atlanta, Georgia 30326-4334.

## GENERAL ALLEGATIONS

38.      Defendant employed Plaintiffs as remote CSRs from Plaintiffs' home offices within the last three (3) years.

39.     Defendant's CSRs are responsible for, among other things: (a) booting up their computers and logging into several essential computer software programs and applications, as well as Defendant's phone system, before fielding phone calls; (b) taking in-bound calls from and making out-bound calls to individuals who need assistance; (c) ensuring that every call is documented and accounted for in

Defendant's system; (d) reading emails daily with work instructions; and (e) logging out of the computer software programs and applications and the hard phones and shutting down their computers.

40.     Defendant's CSR jobs are hourly, non-exempt positions with rigid schedules that require CSRs, including Plaintiffs, to work at least eight (8) hours per day, on average five (5) days each week, and up to forty (40) hours or more in a workweek.

41.     These schedules result in CSRs routinely working overtime on a weekly basis.

42.     Indeed, throughout their employment with Defendant, Plaintiffs were required to work a substantial amount of unpaid time, including overtime, as part of their roles as a CSR.

43.     At all relevant times, Defendant controlled their CSRs' work schedules, duties, protocols, applications, assignments and employment conditions.

44.     Defendant was also responsible for training and continuing their CSRs' education in their role as CSRs.

45.     Defendant's CSRs all perform essentially the same tasks and are required to use the same or similar computer programs, software programs, applications and phone systems.

46.     These programs, applications and systems are integral and an important part of the CSRs' work, and they cannot perform their jobs without them.

47.     Defendant's CSRs all follow the same timekeeping process, are subject to the same relevant timekeeping and attendance policies, and are subject to quality assurance reviews based on the same or similar criteria.

48.     Defendant expressly instructs and trains CSRs to have all of their computer networks, software programs and applications open and ready at the start of their scheduled shifts and before they can log into Defendant's phone system and begin taking and making phone calls.

49.     CSRs, including Plaintiffs, are instructed to only include the time that they are fully prepared to field calls in their hours worked each shift.

50.     Defendant furthermore enforces their policy of requiring all computer networks, programs and applications be open and ready at the commencement of a CSR's shift, and critically, before they clock in, through their performance metrics and schedule adherence policies.

51.     More specifically, being clocked in but unavailable to take calls for too long can result in poor performance scores and possible disciplinary action, up to and including termination.

52.     Defendant's scoring guidelines measure a CSRs' ability to adhere to

10

mandatory protocols and are comprised of various performance metrics, including but not limited to the CSRs' complete and correct resolution of issues and inquiries.

53.    This performance metric necessarily requires that CSRs be logged into all computer programs, applications and systems, and have all reference materials and available resources open at the time of the call.

54.    Failing to accurately account and pay for all of the time actually worked by employees is a clear violation of the FLSA's record keeping requirements. *See* 29 U.S.C. § 211(c).

55.    Because CSRs are prohibited from including all hours worked in their time recorded, Defendant's compensation policy and system fails to properly account and compensate them for all time worked, including their overtime hours, each day and each workweek.

56.    Thus, the hours reflected on the CSRs' pay stubs are inaccurate and contrived by Defendant.

57.    In fact, as outlined below, Defendant maintains a common plan and policy pursuant to which they fail to pay their CSRs for no less than twenty-two (22) minutes per day of work performed during pre- and post-shift time and during their lunch periods.

58.    This time could easily be recorded, accounted for and paid, but for

11

Defendant chose not to credit such time as time worked.

### A.      Pre-Shift Off-the-Clock Work

59.     In addition to their regularly scheduled shifts, and as mentioned above, Defendant's CSRs perform pre-shift work tasks for which they are uncompensated.

60.     Pursuant to Defendant's policies, training and direction, Defendant's CSRs are required to start up and log into various secure computer programs, software programs and applications in order to perform their jobs.

61.     The pre-shift startup and login process takes substantial time on a daily basis with said time averaging fifteen (15) to twenty (20) minutes per day, and the tasks can take longer if CSRs experience technical problems with the computer, software, and/or applications.

62.      Prior to the commencement of each scheduled shift, Plaintiffs, as well as the other CSRs, were required to complete the following tasks or tasks substantially similar to the tasks below:

> a.  Turn on their computers;
>
> b.  Load and log-into Pulse Secure;
>
> c.  Load and log-into VM Ware
>
> d.  Load and log-into VDI Desktop;
>
> e.  Load and log-into Visa Online;

    f.  Load and log-into Agui;

    g.  Load and log-into Skype;

    h.  Load and log-into V-cast;

    i.  Load and log-into G-Mail[2];

    j.  Open TD Bank Policies (client specific);

    k.  Load and log-into the queuing system;

    l.  Load and log-into Skype;

    m. Load and log-into Notepad

    n.  Load and log-into Avaya (phone); and

    o.  Finally, load, log-in, and clock into Workforce.

63.    The aforementioned tasks are an integral and essential aspect of a CSR's job duties and responsibilities, as CSRs must have all of the above referenced computer programs, systems, and applications up and running on their computers in order to be prepared to accept incoming calls.

64.    Yet, Defendant fails to compensate CSRs for the computer boot up tasks.

65.    Instead, Defendant maintains attendance policies that require them to

---

[2] Upon logging in, the email system generates a passcode which is emailed to CSRs. This dual-authentication process is an integral and indispensable part of the CSRs' boot-up process.

be call-ready at the start of their scheduled shift. Additionally, Defendant maintains a schedule adherence policy that requires them to be available for calls for no less than 95% of their scheduled hours each week.

66. Defendant also requires CSRs to read emails with work instructions and announcements, which further pressures them into performing off-the-clock work.

67. Plaintiffs were explicitly told (in writing) by their supervisors that "anything you do that's not on your schedule effects your adherence."

68. As a result, Defendant maintains a common plan and policy pursuant to which they fail to pay CSRs for no less than fifteen (15) minutes per day of work performed in connection with the above pre-shift activities.

## B.   Meal-Period Off-the-Clock Work

69. Defendant provides their CSRs with one (1) thirty (30) minute unpaid lunch break per shift.

70. In reality, Defendant routinely requires CSRs to perform work during their unpaid lunch breaks.

71. Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time

14

for snacks. These are rest periods. The employee must be *completely relieved* from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

72.     Defendant does not provide CSRs with a bona fide meal period because its policies and procedures require CSRs to return from their lunch early to perform at least part of the boot up process outlined above.

73.     In fact, several of the programs utilized by CSRs automatically log them out if they are idle for more than a few minutes (at lunch), which requires them to undergo some or all the bootup process outlined herein.

74.     On most days, CSRs spend approximately five (5) to ten (10) minutes performing this work during their unpaid meal breaks on most days, however, such time is even greater, when CSRs are required to do a complete reboot.

75.     Defendant's management is aware that this was Plaintiffs' and other CSRs' practice to perform these tasks off the clock, and could have paid CSRs for this time, but did not.

**C.     Post-Shift Off-the-Clock Work**

76.     Pursuant to Defendant's policies, training and direction, Defendant's

15

CSRs are required at the end of each shift to log out of the essential computer software programs and applications utilized during their shifts.

77.     The shutdown and logout process requires another two (2) to three (3) minutes of off the clock work per shift.

78.     Pursuant to Defendant's policies, training and direction, Plaintiffs and the other CSRs are not allowed begin the shutdown and logout process until their scheduled shift ends and they complete their last fielded call.

79.     Defendant did not compensate CSRs for all the time spent shutting down and logging out of their essential work systems.

80.     The unpaid off-the-clock work performed after each shift by Plaintiffs and all other CSRs directly benefits Defendant, and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

> **D.     Exemplary Pay-Period to Illustrate Pre-Shift, Meal-Period and Post-Shift Compensation Deficiencies**

81.     An example of specific workweeks where Defendant failed to pay Plaintiff Kenan all overtime due for hours worked in excess of forty (40) hours, as mandated by the FLSA, includes the following:

**Pay Period of 08/14/2022 to 08/27/2022**

- Plaintiff Kenan was paid at a rate of $15.00 per hour for the 73.19833 regular hours and $22.50 per hour for 10.065 overtime hours Defendant credited her with as having worked.

- With unpaid pre-shift, meal-period, and post-shift time, in a range of twenty-two (22) to thirty three (33) minutes per shift, at five shifts per week, Plaintiff Kenan should have been paid an additional one hundred ten (110) to one hundred sixty five (165) minutes at her overtime rate of $22.50 during the overtime workweek.

82.     Plaintiff Cooper similarly routinely worked over forty hours or more hours per week.

83.     The off-the-clock hours at issue herein constitute overtime hours worked in virtually all workweeks.

## E.     Defendant Benefitted from the Uncompensated Off-the-Clock Work

84.     At all relevant times, Defendant directed and directly benefitted from the work performed by Plaintiffs and similarly situated employees in connection with the above-described pre-shift, meal-period and post-shift activities performed by CSRs.

85.     At all relevant times, Defendant controlled the work schedules, duties, protocols, applications, assignments and employment conditions of their CSRs.

86.     At all relevant times, Defendant was able to track the amount of time

17

CSRs spent in connection with the pre-shift, meal-period and post-shift activities.

87.     Defendant failed to do so and failed to compensate CSRs for the off-the-clock work they performed.

88.     At all relevant times, CSRs were non-exempt hourly employees, subject to the requirements of the FLSA.

89.     At all relevant times, Defendant used their attendance, adherence and timekeeping policies against the CSRs in order to pressure them into performing the pre-shift, meal-period and post-shift off-the-clock work.

90.     Defendant expressly trained and instructed CSRs to perform the above-described pre-shift activities *before* the start of their scheduled shifts, to ensure they were prepared to take calls (i.e., were "phone ready") the moment their shifts began.

91.     At all relevant times, Defendant's policies and practices deprived CSRs of wages owed for the pre-shift, meal-period and post-shift activities they performed.

92.     Because Defendant's CSRs typically worked forty (40) hours or more in a workweek, Defendant's policies and practices also deprived them of overtime pay in many workweeks.

93.     Defendant knew or should have known that the time spent by CSRs in connection with the pre-shift, meal-period and post-shift activities was compensable under the law.

94.   In light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that they acted in good faith.

95.   Despite knowing CSRs performed work before and after their scheduled shifts and during their unpaid meal periods, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

96.   Unpaid wages related to the off-the-clock work described herein are owed to CSRs at the FLSA mandated overtime premium of one and one-half times their regular hourly rate because CSRs regularly worked in excess of forty (40) hours in a workweek.

## FLSA COLLECTIVE ACTION ALLEGATIONS

97.   Plaintiffs bring this action pursuant to 29 U.S.C. § 216(b) of the FLSA on their own behalf and on behalf of:

> *All current and former CSRs who worked for Defendant at any time during the three years preceding the filing of this Complaint up through and including judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiffs reserve the right to amend this definition if necessary.

98.   Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiffs and other similarly situated CSRs.

19

99.    Excluded  from  the  proposed  FLSA  Collective  are  Defendant's executives  and  administrative  and  professional  employees,  including computer professionals and outside salespersons.

100.   Consistent with Defendant's policy and pattern or practice, Plaintiffs and  the  members  of  the  FLSA  Collective  were  not  paid  premium  overtime compensation when they worked beyond forty (40) hours in a workweek.

101.   Defendant assigned and/or was aware of all of the work that Plaintiffs and the members of the FLSA Collective performed.

102.   As  part  of  its  regular  business  practices,  Defendant  intentionally, willfully and repeatedly engaged in a pattern, practice and/or policy of violating the FLSA with respect to Plaintiffs and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

      a.    Willfully failing to pay their employees, including Plaintiffs and the members of the FLSA Collective, premium overtime wages for hours worked in excess of forty (40) hours per workweek; and

      b.    Willfully failing to record all of the time that their employees, including Plaintiffs and the members of the FLSA Collective, worked for the benefit of Defendant.

103.   Defendant is aware or should have been aware that federal law requires them to pay Plaintiffs and the members of the FLSA Collective overtime premiums for hours worked in excess of forty (40) per workweek.

104.   Defendant's unlawful conduct has been widespread, repeated and consistent.

105.   A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiffs under 29 U.S.C. § 216(b).

106.   The employees on behalf of whom Plaintiffs bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

107.   The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location and rate of pay.

108.   The key issues – the amount of uncompensated pre-shift start-up/log-in time, unpaid meal period time, and the amount of post-shift shut down/log out time owed to each employee – do not vary substantially among the proposed FLSA Collective members.

109.   Many similarly situated current and former CSRs have been underpaid in violation of the FLSA and would benefit from the issuance of a court-supervised

notice of this lawsuit and the opportunity to join it.

110.   Court-supervised notice of this lawsuit should be sent to the FLSA Collective pursuant to 29 U.S.C. § 216(b).

111.   Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

112.   Plaintiffs estimate that the proposed FLSA Collective, including both current and former employees over the relevant period, will include hundreds, if not thousands, of workers.

113.   The precise number of FLSA Collective members should be readily available from a review of Defendant's personnel and payroll records.

## RULE 23 NORTH CAROLINA CLASS ACTION ALLEGATIONS

114.   Plaintiff Kenan brings this action pursuant to Fed. R. Civ. P. 23(b)(3) on her own behalf and on behalf of:

> ***All current and former CSRs who worked for Defendant in North Carolina at any time during the applicable statutory period***.

(hereinafter referred to as the "Rule 23 North Carolina Class"). Plaintiff Kenan reserves the right to amend the putative class definition if necessary.

115.   The members of the Rule 23 North Carolina Class are so numerous that joinder of all Rule 23 North Carolina Class members in this case would be

22

impractical.

116.   Plaintiff Kenan reasonably estimates that there are hundreds of Rule 23 North Carolina Class members. Rule 23 North Carolina Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

117.   There is a well-defined community of interest among Rule 23 North Carolina Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 North Carolina Class.

118.    These common legal and factual questions include, but are not limited to, the following:

      a.    Whether the pre-, mid-, and post-shift time Rule 23 North Carolina Class members spend on start-up/log-in activities, shut-down activities, and mid-shift call logging activities off the clock each shift is compensable time;

      b.    Whether Defendant breached its agreement with the Plaintiffs and the Rule 23 North Carolina Class to pay for all hours worked at the agreed upon rate;

      c.    Whether the Rule 23 North Carolina Class members are owed wages for time spent performing pre-, mid-, and post-shift activities discussed herein, and if so, the appropriate amount thereof; and

      d.    Whether Defendant's failure to pay the Rule 23 North Carolina Class members for this pre-, mid-, and post-shift time resulted in

a violation of the NCWHA's requirement to pay employees all promised wages and the promised rates.

119.   Plaintiff Kenan's claims are typical of those of the Rule 23 North Carolina Class in that they and all other Rule 23 North Carolina Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.

120.   Plaintiff Kenan's claims arise from the same policies, practices, promises and course of conduct as all other Rule 23 North Carolina Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 North Carolina Class members.

121.   Plaintiff Kenan will fully and adequately protect the interests of the Rule 23 North Carolina Class and she has retained counsel who are qualified and experienced in the prosecution of North Carolina wage and hour class actions.

122.   Neither Plaintiff Kenan nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 North Carolina Class.

123.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 North Carolina Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

24

124.   Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

125.   This case will be manageable as a Rule 23 Class action. Plaintiff Kenan and her counsel know of no unusual difficulties in this case and Defendant and their corporate/government clients all have advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

126.   Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

127.   Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 North Carolina Class and declaratory relief is appropriate in this case with respect to the Rule 23 North Carolina Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

128.   Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and

(b)(3) on her own behalf and on behalf of:

> *All similarly situated current and former hourly CSRs who*
> *worked for Defendant in the United States, at any time during*
> *the last three years.*

(hereinafter referred to as the "Rule 23 Nationwide Class").  Plaintiff reserves the right to amend this definition as necessary.

129.   The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds of Rule 23 Nationwide Class members.  Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

130.   There is a well-defined community of interest among Rule 23 Nationwide members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

   a.   Whether the pre-shift time that Rule 23 Nationwide Class members spend on start-up/log-in activities prior to "clocking in" for each shift is compensable time;

   b.   Whether the time that Rule 23 Nationwide Class members spend on work activities during their lunch break, such as logging back into computer systems and clocking in is compensable time;

c.   Whether the time that the Rule 23 Nationwide Class members spend on work activities after they clock out, such as logging out of computer systems and shutting down the computer is compensable time; and

d.   Whether Defendant's failure to pay the Rule 23 Nationwide Class members for this pre-, mid- and post-shift time at their agreed upon rate constitutes a breach of contract and whether Defendant was unjustly enriched.

131.   Plaintiffs' claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices.   Plaintiffs' claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 Nationwide Class members' claims and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

132.   Plaintiffs will fully and adequately protect the interests of the Rule 23 Nationwide Class and have retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiffs nor their counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

133.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically

infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer. Prosecution of this case as a Rule 23 Class action will also eliminate the possibility of duplicative lawsuits being filed in state and federal courts throughout the nation.

134.   This case will be manageable as a Rule 23 Class action. Plaintiffs and her counsel know of no unusual difficulties in this case, and Defendant has advanced, networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

135.   Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *See Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

136.   Because Defendant acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
### (29 U.S.C. § 216(b) Collective Action)
### VIOLATION OF FLSA, 29 U.S.C. § 201, *et seq.*
### FAILURE TO PAY OVERTIME WAGES

137.   Plaintiffs re-allege and incorporates all previous paragraphs herein.

138.   At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

139.   At all times relevant to this action, Plaintiffs and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

140.   Plaintiffs and the FLSA Collective, by virtue of their job duties and activities actually performed, are all non-exempt employees.

141.   Plaintiffs and the FLSA Collective either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) were employed in an enterprise engaged in commerce or in the production of goods for commerce.

142.   At all times relevant to this action, Defendant "suffered or permitted" Plaintiffs and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

143.   At all times relevant to this action, Defendant required Plaintiffs and the FLSA Collective to perform no less than twenty-two (22) to thirty-three (33) minutes of off-the-clock work per shift, but failed to pay these employees the federally

mandated overtime compensation for the off-the-clock work.

144.    In workweeks where Plaintiffs and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime, should have been paid at the federally mandated rate of 1.5 times each employee's regularly hourly wage, including shift differentials and nondiscretionary incentive pay where applicable. 29 U.S.C. § 207.

145.    Defendant's violations of the FLSA were knowing and willful.

146.    Defendant knew or could have determined how long it takes its CSRs to perform their off-the-clock work.

147.    Further, Defendant could have easily accounted for and properly compensated Plaintiffs and the FLSA Collective for these work activities, but did not.

148.    The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

### COUNT II
### (Rule 23 North Carolina Class Action)
### Violations of the North Carolina Wage and Hour Act, N.C.G.S. §§ 95-25.1, *et seq.*;

149.    Plaintiff Kenan re-alleges and incorporates all previous paragraphs

herein.

150.   At all times relevant to the action, Defendant is an employer covered by the mandates of the NCWHA, N.C.G.S. §§ 95-25.1, et seq., and Plaintiff Kenan and the Rule 23 North Carolina Class are employees entitled to the NCWHA's protections.

151.   The NCWHA entitles employees to compensation for every hour worked in a workweek. See, N.C.G.S. § 95-25.3.

152.   Pursuant to NCWHA, N.C.G.S. § 95-25.6, it is unlawful for an employer to "suffer or permit" an employee to work without paying all owed, earned, and accrued promised wages, on the employee's regular payday.

153.   At all relevant times, Defendant, pursuant to its policies and practices, failed and refused to pay Plaintiff Kenan and the North Carolina Class all owed, earned, and promised wages.

154.   Pursuant to NCWHA, N.C.G.S. § 95-25.8 it is unlawful for an employer to withhold any portion of an employee's wages without the employee's advance written authorization, including the amount and reason for the deduction. If the amount is not available when the employee signs the authorization, the employee must receive advance written notice of the exact amount and of the right to withdraw the authorization.

155.   Consistent with the above, Defendant's wage withholding was in violation of N.C.G.S. § 95-25.6 and N.C.G.S § 95-25.8.

156.   Consequently, as a result of Defendant's unlawful policies and practices, Plaintiff Kenan and the North Carolina Class have been deprived of compensation due and owing.

157.   Defendant's failure to pay Plaintiff Kenan and the North Carolina Class all owed, earned, and promised wages, despite the fact that, upon information and belief, Defendant knew of its obligations under the law, entitles Plaintiff Kenan and the North Carolina Class to liquidated damages in an amount equal to the amount of unpaid wages, under N.C.G.S §§ 95-25.22 (a1).

158.   Defendant violated the NCWHA by regularly and repeatedly failing to compensate Plaintiff Kenan and the Rule 23 North Carolina Class for the time spent on the work activities described in this First Amended Complaint.

159.   As a result of Defendant's unlawful acts, Plaintiff Kenan and the North Carolina Class have been deprived of all compensation due under the law, and are entitled to recovery of such amounts, liquidated damages, prejudgment interest, and attorneys' fees and costs, pursuant to N.C.G.S §§ 95- 25.6, 95.25.22(a), (a1), and (d).

## COUNT III
### (Rule 23 Nationwide Class Action)
### Breach of Contract

160.   Plaintiffs reallege and incorporate all previous paragraphs herein.

161.   At all times relevant to this action, Defendant had a binding and valid contract with Plaintiffs and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regularly hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed on Defendant's behalf.

162.   Defendant's contractual promises to pay Plaintiffs and each Rule 23 Nationwide Class member's applicable hourly rate is evidenced by, among other things, each pay stub issued to Plaintiffs and the Rule 23 Nationwide Class members.

163.   Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiffs, has an hourly rate of approximately $15.00 per hour.

164.   Plaintiffs and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises and performed under the contract by doing their jobs and carrying out the work they performed each shift including the unpaid, off-the-clock work that was required of them, accepted by Defendant, and that they performed, in connection with pre-shift and meal period activities, described herein.

165.   By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work they performed, Defendant systematically breached its contracts with Plaintiffs and each member of the Rule 23 Nationwide Class.

166.   To the extent there is no state law remedy available, Plaintiffs and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour but less than 40 hours per week.

167.   As a direct and proximate result of Defendant's contractual breaches, Plaintiffs and every other member of the Rule 23 Nationwide Class have been damaged (to the extent there is no other state law remedy) in amount to be determined at trial.

### COUNT IV
### (Rule 23 Nationwide Class Action)
### Unjust Enrichment

168.   Plaintiffs re-allege and incorporate all previous paragraphs herein.

169.   This Count is pled in the alternative to Count III, supra, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

170.   At all times relevant to this action, Defendant promised Plaintiffs and

every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiffs and the Rule 23 Nationwide Class members performed for the benefit of Defendant.

171.   Plaintiffs and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

172.   By not paying Plaintiffs and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

173.   Plaintiffs and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

174.   Defendant received and accepted the above-referenced off-the-clock work services from Plaintiffs and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

175.   Upon information and belief, Defendant used the monies owed to Plaintiffs and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

176.   Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiffs and the Rule 23 Nationwide Class

performed for Defendant's benefit, without having compensated Plaintiffs and the Rule 23 Nationwide Class for the same.

177.   Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

178.   As a direct and proximate result of Defendant's actions, and to the extent there is no other state law remedy available, Plaintiffs and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf, on behalf of the putative FLSA Collective, on behalf of the Rule 23 North Carolina Class, and on behalf of the Rule 23 Nationwide Class requests judgment as follows:

a.   Certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.   Certifying this action as a class action (for the Rule 23 North Carolina Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' state law claims under the NCWHA (Count II);

c.   Certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiffs' state law claims for common law breach of contract and unjust

enrichment;

d.      Ordering Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all collective action Class members, the Rule 23 North Carolina Class members, and the Rule 23 Nationwide Class members, and permitting Plaintiffs to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the Class members of their rights by law to join and participate in this lawsuit;

e.      Designating Plaintiffs as the representative of the FLSA collective action and the Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same;

f.      Designating Plaintiff Kenan as the representative of the Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same

g.      Declaring Defendant violated the FLSA and the DOL's attendant regulations as cited herein;

h.      Declaring Defendant's violation of the FLSA was willful;

i.      Declaring Defendant violated the NCWHA as cited herein;

j.      Declaring Defendant's violation of the NCWHA was willful;

k.      Granting judgment in favor of Plaintiffs and against Defendant and awarding Plaintiffs and the collective action Class, the Rule 23 North Carolina Class, and the Rule 23 Nationwide Class the full amount of damages and liquidated damages available by law;

l.      Awarding reasonable attorneys' fees and costs incurred by Plaintiffs in filing this action as provided by statute;

m.      Awarding other pre- and post-judgment interest to Plaintiffs on these damages; and

n.      Awarding such other and further relief as this Court deems appropriate.

## **JURY DEMAND**

Plaintiffs, individually and on behalf of all others similarly situated, by and through their attorneys, hereby demand a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: October 26, 2022

Respectfully Submitted,

_s/ Andrew Y. Coffman_____
**PARKS, CHESIN, & WALBERT, PC**
Andrew Y. Coffman (GA Bar # 173115)
75 14th Street, 26th Floor
Atlanta, Georgia 30309
Phone: (404) 873-8000
Email: acoffman@pcwlawfirm.com

**ASH LAW, PLLC**
Charles R. Ash, IV (P73877) (*Pro Hac Vice Forthcoming*)
402 W Liberty  Street
Ann Arbor, MI 48178
Phone: (734) 234-5583
Email: cash@nationalwagelaw.com

**HOOPER HATHAWAY, P.C.**
Oscar Rodriguez (P73413) (*Pro Hac Vice Forthcoming*)
126 Main St

Ann Arbor, MI 48104-1903
Phone: (734) 662-4426
Email: orod@hooperhathaway.com

*Counsel for Plaintiffs and the*
*Putative Collective/Class Members*

# EXHIBIT 1

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**TOYA KENAN and MONICA COOPER,**
individually, and on behalf of others              Case No.
similarly situated,

       Plaintiffs,                                    Hon.:

**vs.**                                            Mag.:

**GLOBAL PAYMENTS, INC.,** a Georgia
Corporation,

       Defendant.

---

## CONSENT TO JOIN

I work or worked for Global Payments, Inc. ("Global Payments") as an hourly Customer Service Representative and worked uncompensated overtime.

I choose to participate in the above-captioned lawsuit to recover unpaid off-the-clock work and overtime wages under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and other relief under federal law.

I choose to be represented by the named Plaintiff and Ash Law, PLLC and Hooper Hathaway, P.C. (collectively "Plaintiff's Counsel").  I agree to be bound by their decisions in the litigation and by any adjudication of this action by a court, whether it is favorable or unfavorable.  I understand that reasonable costs expended by Plaintiff's Counsel on my behalf will be deducted from any settlement or judgment amount on a pro-rata basis among all other plaintiffs.  I understand that Plaintiff's Counsel will petition the Court to award them attorneys' fees from any settlement or judgment.

Print Name:  Toya S Kenan

Signature:  *Toya S Kenan*

Date:  09/06/2022

6

# EXHIBIT 2

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

**TOYA KENAN and MONICA COOPER,**
individually, and on behalf of others similarly
situated,

                    Case No.

            Plaintiffs,              Hon.:

                    Mag.:

**vs.**

**GLOBAL PAYMENTS, INC.**, a Georgia
Corporation,

            Defendant.

---

## <u>CONSENT TO JOIN</u>

I work or worked for Global Payments, Inc. ("Global Payments") as an hourly Customer Service Representative and worked uncompensated overtime.

I choose to participate in the above-captioned lawsuit to recover unpaid off-the-clock work and overtime wages under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), and other relief under federal law.

I choose to be represented by the named Plaintiff and Ash Law, PLLC and Hooper Hathaway, P.C. (collectively "Plaintiff's Counsel"). I agree to be bound by their decisions in the litigation and by any adjudication of this action by a court, whether it is favorable or unfavorable. I understand that reasonable costs expended by Plaintiff's Counsel on my behalf will be deducted from any settlement or judgment amount on a pro-rata basis among all other plaintiffs. I understand that Plaintiff's Counsel will petition the Court to award them attorneys' fees from any settlement or judgment.

Print Name:  Monica Cooper

Signature:  *[signature]*

Date:  09/06/2022